**J.E. DAVIDSON, et al.,**
**Plaintiffs–Appellants,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, et al.,**
**Defendants–Appellees.**

**No. 87–5009.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 19, 1987.
Decided Feb. 3, 1988.

R. Jan Jennings (argued), Branstetter, Kilgore, Stranch and Jennings, Nashville, Tenn., for plaintiffs-appellants.

John W. Gill, U.S. Atty., Knoxville, Tenn., Marilyn L. Hudson, John F. Cordes, Jr., U.S. Dept. of Justice, Civil Div., Washington, D.C., Mona S. Butler (argued), for defendants-appellees.

Before LIVELY, Chief Judge; WELLFORD, Circuit Judge; and BROWN, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Plaintiffs-appellants appeal from the district court's entry of summary judgment dismissing their challenge to the validity of Department of Energy (DOE) regulations, 10 C.F.R. §§ 1046.11–.13 (1987), which establish minimum medical and physical fitness standards for security force personnel at DOE nuclear facilities at Oak Ridge, Tennessee, operated by private contractors. Alleging that the regulations have a discriminatory impact on female, handicapped, and older employees and are "arbitrary and capricious" and "not in accordance with law," plaintiffs filed suit under the Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202, and the Administrative Procedure Act (APA), 5 U.S.C. § 706. The district court granted defendants' motions for summary judgment on both counts, and we affirm.

### I.

Under the Atomic Energy Act of 1954, the Department of Energy is charged with

regulating the development, use, and control of atomic energy. 42 U.S.C. §§ 2011–2284. Specifically, the Secretary of Energy is vested with responsibility for regulating nuclear facilities and weapons. 42 U.S.C. § 7151. The Secretary administers a nationwide nuclear program operating primarily at nuclear facilities owned by the federal government. Most of these facilities, including those at Oak Ridge, are operated by private contractors. The operation of these facilities is subject to extensive regulation to ensure their physical security, which is provided in part by the uninterrupted presence of privately employed protective force personnel. Security of nuclear facilities is, of course, a principal concern with respect to safety of operation.

In light of the increasing threat of terrorist activity, on May 14, 1984, DOE published proposed rules establishing medical and physical fitness qualification standards for privately employed protective force personnel at DOE facilities. The purpose of these tightened standards was to ensure that such personnel "can effectively perform their normal and emergency duties without undue hazard to themselves, fellow employees, the plant site and the general public." 49 Fed.Reg. 20,436 (1984). Specifically, as relates to this action, the regulations required that security inspectors be able to run certain distances within specified times as a prerequisite to carrying weapons. 10 C.F.R. § 1046, subpt. B., app. A(F) (1987). The regulations were to be applicable equally to incumbent security inspectors and to newly hired security inspectors. 10 C.F.R. § 1046.11(a), (b)(1) (1987).

The physical fitness standards contained in the rules were based on a two-year study conducted by Professional Management Associates, Inc. (PMA), under a contract with DOE. The study was designed to develop and validate a set of physical fitness standards that accurately would indicate effective job performance by security force personnel. 49 Fed.Reg. 20,437 (1984). The study included the development of an inventory of skills and tasks required of all security inspectors at affected DOE facilities nationwide and the testing of security personnel to determine the correlation between physical fitness and job performance.

Following the publication of the proposed rules, DOE held rulemaking hearings in four cities, including Oak Ridge, Tennessee. DOE received oral and written statements at these hearings and also accepted additional written comments for a period of thirty days following publication of the proposed rules. In addition, DOE issued press releases and wrote letters to union officials representing affected protective force personnel to inform them of the proposed rules, to solicit their comments, and to invite their participation in the rulemaking process. During the rulemaking process, DOE made available to the public copies of the PMA validation study on which the standards were based. 49 Fed.Reg. 20,436 (1984). On November 23, 1984, DOE published final rules adopting the proposed medical and physical fitness standards. 49 Fed.Reg. 46,097–46,105 (1984) (codified at 10 C.F.R. § 1046). The final rules also included a mandatory training program to assist incumbent personnel in meeting the standards. 10 C.F.R. § 1046.12.

The individual plaintiffs who filed this action challenging these standards are present and former security inspectors employed by Martin Marietta at Oak Ridge DOE nuclear facilities. They were joined in their suit for declaratory relief by their collective bargaining representative, Local No. 3 of the International Guards Union of America. Plaintiffs claimed that the regulations are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Their contention was that the regulations discriminated against handicapped persons, females, and persons at least forty but less than seventy years of age and, therefore, that the regulations were violative of the federal statutory schemes prohibiting such discrimination. Plaintiffs alleged that as a result of the rules each individual plaintiff had suffered "legal wrong and significant adverse effect on their employment." Absent from the complaint, however, were specifics about what constituted those wrongs. The com-

plaint requested the district court to hold the regulations unlawful and set aside the rules and requirements in controversy. Following commencement of the suit, plaintiffs moved the court to compel discovery of the computer methodology and raw data supporting the PMA study.

DOE moved to dismiss the action or, alternatively, for summary judgment and submitted to the court two volumes that DOE designated as the administrative record underlying the regulations. The volumes contained the transcripts of the public hearings that DOE held as part of the rulemaking process, the PMA validation study, and correspondence and intra-agency memoranda regarding the rules. The volumes did not contain the computer methodology or raw data employed in the validation study. Plaintiffs' response opposing DOE's motion for summary judgment included two affidavits containing information not included in the record submitted by DOE. The affidavit by Dr. Michael Gordon, an expert in statistical analysis and industrial testing, considered the PMA study and found it "fatally flawed" because it did not meet generally accepted professional standards. The other affidavit, by plaintiff J.E. Davidson, described the "displacement" of security inspectors, including a disproportionate number of female inspectors, at the Martin Marietta facilities on the day the challenged rules became effective.

The district court granted DOE's motion for summary judgment, dismissed the complaint, and denied as moot plaintiffs' motion to compel discovery of the computer methodology and raw data supporting the PMA study. The court declined to render the declaratory relief requested by plaintiffs because it found that no justiciable controversy existed and that the lack of "individual, concrete cases" made the case inappropriate for declaratory relief. Furthermore, the district court found that significant evidence in the record indicated a correlation between the regulations' physical fitness standards and a security inspector's job performance. As a result, the court found that the regulations were not arbitrary and capricious, and thus he rejected plaintiffs' APA challenge. The court subsequently denied plaintiffs' motion for reconsideration, but modified its original order to provide that dismissal was without prejudice to the plaintiffs to raise individual claims. Plaintiffs appeal, arguing that in granting summary judgment the district court did not properly consider the evidence presented in affidavits regarding the insufficiency of the validation study and the discriminatory impact of the regulations.

## II.

We review *de novo* the district court's granting of summary judgment in this case. *Cf. American Home Assurance Co. v. Evans,* 791 F.2d 61, 63 (6th Cir.1986) (reviewing DJA claim); *Wayne State University v. Cleland,* 590 F.2d 627, 632–33 (6th Cir.1978) (reviewing APA claim). Because the DOE's promulgation of the rule was a nonadjudicatory action, the proper standard of review under the APA is solely whether the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

In *Cleghorn v. Herrington,* 813 F.2d 992 (9th Cir.1987), the court rejected a similar claim that DOE violated § 706(2)(A) of the APA in its adoption and implementation of the physical fitness standards. The plaintiff in *Cleghorn* asserted that the regulations were "otherwise not in accordance with law" because the PMA validation study did not meet the standards for validation studies under Title VII set forth in the Equal Employment Opportunity Commission's Uniform Guidelines on Employee Selection Procedures (EEOC's Uniform Guidelines). The court, however, rejected this argument, finding that "Cleghorn's attempt to use the APA to assert what is in effect a Title VII claim must fail because it would allow him to circumvent, in direct contravention of congressional intent, the numerous procedural and substantive requirements of Title VII." *Id.* at 995. The *Cleghorn* court went on to emphasize that its role as a reviewing court under the APA was not to determine whether the vali-

dation study was correct and proper, but instead merely to determine whether DOE acted arbitrarily or capriciously, or abused its discretion in imposing the physical fitness requirements.

The plaintiff in *Cleghorn* essentially argued that three aspects of the validation study indicated that DOE's reliance on the study was an abuse of discretion. He asserted (1) that the fitness test accurately measured job performance only in emergency situations, (2) that the validation study's sample did not accurately reflect the relevant labor market, and (3) that the study was not cross-validated by sex or age. The court considered each of these claims, but found none of them sufficient to show that DOE had failed to consider relevant factors in adopting the regulations or that its decision was irrational. *Id.* at 996–97. The court emphasized its conclusion that the study's focus on emergency tasks was reasonable:

> While it is to be hoped that terrorist attacks on our nuclear facilities will never be a routine occurrence, the ability to respond effectively to such attacks is crucial to our security. To this end, security inspectors are trained in offensive and defensive combat skills. The authors found a significant correlation between the inspectors' performance in these training exercises and their physical fitness test scores. Their emphasis on these test scores is thus not unreasonable. To draw an analogy, merely because military servicemen do not spend the bulk of their time in armed combat does not mean that the military cannot require its personnel to have the physical skills necessary to engage in such combat should the situation arise. There was no abuse of discretion in testing the security inspectors for the skills necessary to repel hostile attacks.

*Id.* at 996.

The case before this court is similar to *Cleghorn* in that these plaintiffs also seek relief from an alleged discriminatory impact by raising an APA challenge to the DOE regulations. As in *Cleghorn,* these plaintiffs point to the PMA study's alleged violation of the EEOC's Uniform Guidelines to indicate that the regulations are not in accordance with the law, and they similarly complain that the running test does not accurately reflect the daily job performance of a security inspector. Plaintiffs in this action, however, also allege discriminatory impact in violation of federal laws prohibiting discrimination on the grounds of age, *see* 29 U.S.C. § 623, and handicap, *see* 29 U.S.C. §§ 793, 794. This suit further differs from *Cleghorn* in that plaintiffs in this action also seek a judicial declaration under the DJA that the DOE regulations are invalid as applied to the alleged victims of discrimination.

■ In spite of the differences between the two suits, however, we find the court's reasoning in *Cleghorn* to be applicable to this suit. The claims that plaintiffs raise are essentially that the validation study was faulty and that the regulations adopted had an adverse discriminatory impact on certain security inspectors. Rather than raising the latter claim under the relevant federal antidiscrimination statutes, however, plaintiffs have pleaded their action under the APA and the DJA. *Cleghorn* held that a plaintiff's artful pleading cannot transform a Title VII claim into an APA claim so as to permit evasion of Title VII's procedural requirements. We agree and hold further that artful pleading cannot transform a claim asserting violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623, or the Rehabilitation Act of 1973, 29 U.S.C. §§ 793, 794, into a suit under the APA or the DJA.

### III.

■ Any alleged adverse discriminatory impact of the DOE regulations is not a matter properly before a court reviewing agency action under the APA. The purpose of APA review is to ensure that an agency satisfied legal requirements in taking an action and that the action was not arbitrary and capricious *at the time it was taken.* As the district court noted, the individual plaintiffs may have valid claims that the DOE rules function with a discriminatory impact or effect. Claims based on

the functioning of the rules, rather than on the processes by which they were enacted, however, should be brought under the relevant discrimination statutes, not the APA.

Our role, therefore, is simply to review the agency's action to determine whether it was "arbitrary and capricious." This standard of review is deferential and accords agency action a presumption of regularity. *Wayne State University v. Cleland,* 590 F.2d at 632. The Supreme Court has explained the standard as follows:

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 [83 S.Ct. 239, 245–46, 9 L.Ed.2d 207] (1962). In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* [419 U.S. 281] at 285 [95 S.Ct. 438, at 442, 42 L.Ed.2d 447 (1974)]; *Citizens to Preserve Overton Park v. Volpe,* [401 U.S. 402] at 416 [91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971)]. Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983). In reviewing agency action under the "arbitrary and capricious" standard, the court should focus its review on "the administrative record already in existence, not some new record made initially in the reviewing court." *Cleghorn,* 813 F.2d at 997 (quoting *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed. 2d 106 (1973) (per curiam)). Thus, the review should be "based on the full administrative record *that was before the Secretary at the time* he made his decision." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971) (emphasis added).

The district court based its grant of summary judgment on its consideration of the large administrative record that DOE submitted in this case. The court did not consider the affidavit offered by plaintiffs that characterized the PMA validation study as incomplete, unprofessional, and not in accordance with EEOC guidelines. We believe that the district court's review satisfies the guidelines established by *Camp* and *Overton Park.* The administrative record in this case reflects the rulemaking process conducted by DOE with a full opportunity for comment and response.[1] The letters written by DOE to plaintiffs' union representatives, including plaintiff Davidson, gave plaintiffs fair notice of DOE's proposed actions, and the public hearings conducted as part of the rulemaking process afforded plaintiffs ample opportunity to raise criticisms regarding the soundness and propriety of the validation study. Plaintiffs did not choose to voice their current concerns during the rulemaking process. If they had, their criticisms would have been incorporated in the administrative record for future judicial review. Having failed to do so, and thus

---

1. Plaintiffs also argue that the district court erred in denying as moot their motion to compel discovery of the computer methodology and raw material supporting the PMA study. In light of our finding that the district court properly excluded the affidavits submitted by plaintiffs and conducted a sufficient review of the administrative record that was before DOE at the time it promulgated the regulations, it does not appear to us that the district court erred in denying the motion. In any event, the denial would not constitute reversible error in light of the voluminous administrative record reviewed by the district court in this case.

having failed to afford the Secretary an opportunity to respond to those criticisms during the rulemaking process, plaintiffs will not be permitted to introduce new evidence in this judicial proceeding of their concerns, expressed nearly three years after the completion of the administrative process.

We examine only the administrative record to determine whether DOE's adoption of the fitness standards was arbitrary and capricious. The plaintiffs' main complaint is that the sample of protective force personnel used in the validation study was not representative of the population of persons to which the regulations would be applied and that the running test adopted by DOE is not an accurate predictor of the job performance of a security inspector at the Martin Marietta facilities. The *Cleghorn* court considered a similar challenge to the sufficiency of the testing sample and found that Cleghorn's objections were "insufficient to demonstrate that relevant factors were not considered or that [DOE's] decision was irrational." 813 F.2d at 997. We agree and adopt this rationale.

We also find that DOE's adoption of standards based on running measures and tests was not arbitrary. The administrative record shows that the validation study identified other possible tests that could have been conducted. The study ultimately concluded, however, that considerations of simplicity and standardization, as well as the high statistical correlation found between running and the performance of job tasks, made the running test an accurate measure of physical fitness and a valid predictor of a security inspector's job performance. We cannot find that DOE's promulgation of the standards was irrational simply because running was chosen as a primary component of the standards.

On full review of the administrative record in this case, we agree with the district court and with *Cleghorn* that DOE's promulgation of the challenged regulations was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under 5 U.S.C. § 706(2)(A). Accordingly, we AFFIRM the district court's entry of summary judgment for defendants.