**Doris WISHER, Plaintiff,**

v.

**Paul COVERDELL, in his official capacity as Director of the United States Peace Corps, Defendant.**

Civ. A. No. 89–2570–K.

United States District Court, D. Massachusetts.

Jan. 27, 1992.

---

Harold L. Lichten, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, Boston, Mass., for plaintiff.

Susan M. Poswistilo, U.S. Attorney's Office, Boston, Mass., for defendant.

## OPINION

KEETON, District Judge.

This is a handicap discrimination action under Sections 501 and 504 of the Rehabilitation Act. On October 7, 1991, ten days before trial was scheduled to commence, defendant filed a motion to dismiss on the ground that plaintiff may not state a claim under either § 501 or § 504 of the Rehabilitation Act. A bench trial was held on October 17, 1991. At the start of trial the court stated that it would proceed to conduct the one-day trial, hear closing arguments, and then rule on defendant's motion to dismiss as appropriate. At the close of the evidence the court gave the parties a

briefing schedule with the understanding that the court would decide the action based on the briefs and evidence before the court.

## I. *Background*

The parties have stipulated to the following facts. The plaintiff, Doris Wisher, is a 39 year-old woman. From June 28, 1982 until September 25, 1984, she served in the United States Peace Corps ("Peace Corps") as a volunteer in Makokou, Gabon, West Africa. Upon completion of her Peace Corps service, plaintiff submitted to the Peace Corps her application to become a United Nations Volunteer ("UNV"). The UNV program utilizes volunteers from countries around the world by placing them in assignments in developing countries. The program was established by the United Nations General Assembly in December 1970, maintains its headquarters in Geneva, and is administered by the United Nations Development Program ("UNDP").

The UNV program requires each volunteer to be sponsored by an agency in the country from which the volunteer is applying. The Peace Corps is the sponsoring agency for American participants in the UNV program, and is responsible for recruiting, selecting, and screening all Americans applying to the program. An applicant for a UNV position must submit both a Peace Corps application and a UNV application to the Peace Corps.

Because an American UNV volunteer receives benefits from both the UNV program and the Peace Corps, the volunteer must meet qualifying standards for both Peace Corps and UNV service, and a volunteer who is selected is sworn in both as a Peace Corps volunteer and a UNV. A UNV receives a monthly living allowance, settling-in grant, housing, basic furniture and utilities and other similar in-country expenditures. The Peace Corps is responsible for paying the UNV's travel and readjustment allowances, at the same rate paid to Peace Corps volunteers. The United Nations funds all other expenses and allowances arising under the program, including living expenses and in-service medical costs. The Peace Corps will pay for emergency medical evacuations of its sponsored individuals.

After a candidate has submitted the appropriate references and application materials, the Peace Corps determines whether the candidate meets the requirements, exclusive of medical clearance, for UNV service. If the Peace Corps determines that a candidate is suitable for UNV service, it recommends the applicant to the UNV program. If the UNV program accepts the application, the candidate's name is placed by the program on a Roster for Qualified Candidates. Because of the length of the application process, the Peace Corps does not require a medical clearance examination until after the candidate has been accepted by the UNV program. The acceptance is contingent upon medical clearance.

Medical and dental information submitted by a UNV applicant to the Peace Corps is reviewed by an Occupational Health Nurse. In making the determination for medical clearance, the Occupational Health Nurse utilizes the Peace Corps medical review guidelines ("guidelines") as a guide. If the Occupational Health Nurse is unable to clear the applicant medically, the case is presented to the Medical Review Board for a case-by-case review and decision. The Peace Corps guidelines indicate that an individual who is diagnosed with chronic hepatitis, type B, is medically unqualified.

Upon receipt of plaintiff's UNV application, the Peace Corps immediately forwarded it to UNV headquarters in Geneva. On July 4, 1984, plaintiff was notified by UNV headquarters that she was accepted to the Roster of Qualified Candidates for UNV service, contingent upon medical clearance. Between October 1984 and April 1985, plaintiff was nominated for several UNV positions. In particular, in February 1985 the UNDP asked the Peace Corps to sponsor plaintiff for the Mauritania position, subject to medical clearance.

Later that month plaintiff consulted a physician, Richard E. Bryant, to obtain the physical examination for UNV service. On May 3, 1985, as a result of further testing, plaintiff tested positive for hepatitis B sur-

face antigen and negative for hepatitis E antibodies. Plaintiff was then diagnosed by Dr. Emmet Keeffe to have mild chronic hepatitis B, without evidence of any progression towards scarring or cirrhosis, and with no serious impairment to the liver. She was advised by Dr. Keeffe not to donate blood and to be sure any long term sexual partner was vaccinated.

On May 8, 1985, plaintiff and Paul Knepp, the former Coordinator of the UNV program at the Peace Corps, were advised by the Peace Corps that plaintiff would not be medically cleared based upon the results of Dr. Bryant's examination and indicated that her name must be withdrawn from UNV consideration. Mr. Knepp thereafter advised the UNDP that plaintiff could not be medically cleared for the Mauritania position.

Because the Occupational Health Nurse was unable to clear plaintiff's application, plaintiff's application was referred to the Medical Review Board ("Board"). At the time the Board reviewed plaintiff's application, the Board was comprised of a medical advisor, the director of nurses and Dr. Philip Pierce, an outside expert medical consultant. After review, the Board determined that plaintiff was not medically qualified and, by letter dated September 17, 1985, the Peace Corps notified plaintiff that her chronic hepatitis B medically disqualified her from service.

On October 9, 1985, upon the appeal of plaintiff, the Board reconsidered its decision to medically disqualify plaintiff. The Board once again denied plaintiff's appeal because they determined that she was potentially infectious to others and that the Peace Corps should not send such chronically infected individuals to a host country. The Board also stated that they believed her medical situation might progress to cirrhosis and the rate of progression might be unpredictable, and that the countries of potential assignments lack the medical facilities to treat plaintiff. Plaintiff was notified of this final decision on October 10, 1985. On June 21, 1988 plaintiff filed a formal complaint alleging that the Peace Corps violated § 501 and § 504 of the Rehabilitation Act by medically disqualifying her on account of her handicap.

### II. *Plaintiff's § 501 Claim*

■ Defendant argues that because plaintiff is a volunteer, rather than an employee of the Peace Corps, she cannot state a claim under § 501 of the Rehabilitation Act. Under § 501 a federal agency has an affirmative "duty to structure its procedures and programs so as to ensure that handicapped persons are afforded equal opportunity in both job placement and promotion." *Salmon Pineiro v. Lehman*, 653 F.Supp. 483, 489 (D.Puerto Rico 1987) (quoting *Ryan v. Federal Deposit Insurance Corp.*, 565 F.2d 762, 763 (D.C.Cir. 1977). Aggrieved federal employees have a private right of action under § 501. *Prewitt v. United States Postal Service*, 662 F.2d 292, 302–303 (5th Cir.1981).

Plaintiff responds that for purposes of § 501 she is an employee of the Peace Corps. She makes two arguments in support of her contention. First, plaintiff asserts that when she brought her discrimination complaint to the EEOC, defendant accepted plaintiff's charge under § 501, investigated that charge under the procedures for § 501, and provided plaintiff with a notice specifying her rights to appeal under § 501, including authorization either to file for a full hearing with an administrative law judge, or to file a civil action directly in federal court. Rights that plaintiff alleges flow only from a complaint filed under § 501. Second, plaintiff argues that because the Peace Corps exercised "substantial control" over or access to plaintiff's employment relationship with UNV, the Peace Corps is considered plaintiff's employer for § 501 purposes, even if it is not technically her employer.

Plaintiff's arguments fail to address a dispositive issue. Congress has specifically stated that a Peace Corps volunteer shall not be considered a federal employee. The Peace Corps Act states:

except as provided in this chapter, volunteers shall not be deemed officers or employees or otherwise in the service of employment of, or holding office under, the United States for any purpose.

22 U.S.C. § 2504(a). That statute provides further that a Peace Corps volunteer may be deemed a federal employee for "the purposes of the Federal Tort Claims Act and any other Federal tort liability statute, the Federal Voting Assistance Act of 1955 ... section 3342(a), (b), and (c)(1) of Title 31, section 5584 of Title 5 ... and section 214 of this title." 22 U.S.C. § 2504(h). The statute does not make an exception for discrimination laws, including the Rehabilitation Act, although Congress clearly knew how to make an exception when it so intended.

The fact that the Peace Corps issued regulations for volunteers that track the procedures and remedies available generally to federal employees under § 501, does not make Peace Corps volunteers Peace Corps employees. Congress passed a statute that provides unambiguously that Peace Corps volunteers shall not be considered employees except for the purposes of certain laws. The Rehabilitation Act is not one of those laws. Thus the Peace Corps regulations that appear to have treated plaintiff as an employee for the purposes of her Rehabilitation Act claim, not only lack support in the language of the Peace Corps statute, see *EEOC v. AR-AMCO*, —— U.S. ——, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1991), they directly contradict that statute's language. Thus, this court should not—and indeed cannot—accord the Peace Corps' regulations any weight in determining if plaintiff is an "employee" with the right to bring a private action under § 501.

Although it may seem inequitable to allow the Peace Corps to argue at this point in the litigation that plaintiff may not bring her § 501 claim to federal court, this court does not have the authority to disregard the explicit mandate of Congress and hold that plaintiff is an employee who has a private right of action under § 501. Accordingly, plaintiff's § 501 claim must be dismissed.

### III. *Section 504 Claim*

Plaintiff also makes a claim under § 504 of the Rehabilitation Act. That section provides in relevant part:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination ... under any program or activity conducted by any Executive Agency.

29 U.S.C. § 794. Plaintiff's handicap discrimination claim fits squarely within the language of this statute. Plaintiff alleges that she was denied the benefits of the UNV program—a program conducted in part by the Peace Corps, an Executive Agency—solely because of her handicap.

Although the Peace Corps must abide by the Rehabilitation Act, defendant argues that the First Circuit's decision in *Cousins v. Secretary of the U.S. Department of Transportation*, 880 F.2d 603 (1st Cir. 1989), requires that this court dismiss plaintiff's claim for lack of subject matter jurisdiction because § 504 does not provide plaintiff with a private right of action against government agencies.

In *Cousins,* a deaf truck driver brought suit under § 504 against the Department of Transportation ("DOT") after the DOT refused to waive a requirement that excluded deaf persons from working as truck drivers. The First Circuit observed that the Rehabilitation Act does provide for private enforcement actions against any recipient of federal aid and actions against federal agencies as employers. The court noted, however, that the Act is silent about whether a person injured by an agency acting as a regulator may enforce the Act against the agency. The court concluded that the silence reflects the fact that a person aggrieved by agency action has a right to judicial review as provided under the Administrative Procedures Act ("APA"). Thus, there was no need for Congress to create a private right of action because a means of review already existed. *Id.* at 608.

Plaintiff responds that *Cousins* does not control this action because the Peace Corps was acting as an employer when it medically disqualified plaintiff, and a private right of action against a federal agency may

exist to challenge the conduct of a federal agency in its capacity as employer. *See Clark v. Skinner*, 937 F.2d 123, 125 (4th Cir.1991). In the alternative, plaintiff argues that even if the Peace Corps was not acting as an employer, it was clearly not acting as a regulator and therefore *Cousins* does not apply. Instead, plaintiff urges the court to follow the Ninth Circuit's recent decision in *John Doe v. Attorney General of the United States*, 941 F.2d 780 (9th Cir.1991).

*Doe* involved a physician who worked for a private clinic and performed routine pre-employment physical examinations for FBI employees and applicants. When the FBI had cause to believe that Doe was infected with the HIV virus, they stopped sending individuals to him for examination. Doe then sued the government under § 504. The *Doe* court held that Congress manifested an intent that the federal government be subject to the same standards as were private recipients of federal money and local and state governments who received federal funds, thus the FBI was subject to a private right of action for damages under § 504. In so holding, the court specifically distinguished its holding from *Cousins* by concluding that *Cousins* is limited to claims "against a federal agency as a regulator." *Id.* at 780.

Plaintiff's attempt to distinguish *Cousins* is not persuasive. I do not read that case so narrowly as to apply only when a federal agency acts as a regulator in exactly the same manner as the DOT. Rather, I interpret *Cousins* as holding that an agency decision is "regulatory" whenever APA review of that decision is available and appropriate. As the court stated

> One would ordinarily expect ... that when Congress means to permit a private party to ask a court to review the legality of federal actions in a manner that differs from APA review, Congress will say so explicitly in the statute.... Otherwise, it is reasonable to assume that Congress meant the APA to govern.

*Cousins*, 880 F.2d at 607 (quoting *NAACP v. Secretary of Housing and Urban Development*, 817 F.2d 149, 153 (1st Cir.1987).

Thus the issue before the court is not whether the Peace Corps' denial of plaintiff's medical clearance was regulatory activity in the same sense as the DOT's action in *Cousins*, but rather whether it was the type of decision for which APA review is available and appropriate.

Plaintiff argues that APA review is inappropriate because this case involves a federal agency's regulations about qualifications for employment. As support for her contention plaintiff cites *Davidson v. United States Department of Energy*, 838 F.2d 850 (6th Cir.) *cert. denied*, 487 U.S. 1207, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988), and *Cleghorn v. Harrington*, 813 F.2d 992 (9th Cir.1987). Those cases involved discrimination challenges to federal regulations about qualifications for employment by the agency's private contractors. The courts in both cases held that because APA review would allow those plaintiffs to avoid exhaustion of administrative remedies, an APA challenge was improper. The *Cousins* court distinguished its holding from these two cases by observing that they involved a federal agency's regulations about qualifications for employment. *Cousins*, 880 F.2d at 609.

This case, however, does not involve a federal agency's qualifications for employment. As explained in Part II, *supra*, Congress expressly stated by statute that Peace Corps volunteers are not employees. Thus qualifications for volunteers cannot be considered qualifications for employment. Second, even putting aside Congress' explicit mandate, if one looks beyond the labels "regulator" and "employer," and instead examines the function of the Peace Corps as a UNV sponsoring agency, it is clear that the Peace Corps' decision to medically disqualify plaintiff was more similar to the DOT's action in *Cousins* than to the FBI's decision in *Doe*, or the Department of Energy's regulation in *Davidson*.

The Peace Corps Act states that the purpose of the Peace Corps is to

> promote world peace and friendship through a Peace Corps, which shall make available to interested countries and areas men and women of the United States

qualified for service abroad and willing to serve....

22 U.S.C. § 2501. The very purpose of the Peace Corps is to make service abroad available to "qualified" individuals. In addition, the Peace Corps Act gives the Peace Corps Director the responsibility to promulgate rules and regulations to carry out the Peace Corps' functions, much like the Secretary of Transportation has the authority to promulgate rules to carry out its function of assuring transportation safety. *See* 22 U.S.C. § 2503(b).

The Peace Corps' regulation of who may serve as a volunteer is no more an "employment" regulation than the DOT's regulation of who may drive a truck. When the Peace Corps decides who may serve as a UNV participant, the agency is in essence "regulating" who is qualified for UNV service. It is a decision that is closely related to the crux of the Peace Corps' legislated purpose. In contrast, when the Department of Energy passed regulations on who was qualified to be employed by the Department's private contractors, the Department was not acting upon its central and specific legislative mandate to *regulate* energy. Rather, it was acting upon its implicit authority as an *employer* of persons to carry out its regulatory mandate. Thus, *Davidson* may be distinguished from *Cousins* and from the present case on the ground that the Department of Energy was acting as an employer rather than as regulator, even when acting as to those persons employed by the Department's private contractors.

Similarly, the FBI's decision in *Doe* may be distinguished from *Cousins* and this case because the employment that was affected was only incidentally related to the agency's primary purpose—that is, law enforcement. Accordingly, I conclude that this case does not involve employment qualifications in a sense analogous to that illustrated in *Davidson* and *Doe*. Instead, the regulation by the Peace Corps in this case is more closely analogous to the regulation of employment of a truck driver in *Cousins*.

Plaintiff also contends that APA review is inappropriate because a court usually reviews an agency's decision under a much more deferential standard than is consistent with the strict principles of employment discrimination. Such a process, plaintiff argues, will allow agencies like the Peace Corps to be held to a lower standard under § 504 than private employers.

The plaintiff in *Cousins* made a similar argument. The First Circuit's response in that case is equally applicable here.

DOT must comply with whatever legal requirements § 504 places upon it. The special weight that courts might give the DOT's position normally arises out of a determination of congressional intent, in respect to DOT's interpretation of the highway safety statutes it administers, but it is far less likely that Congress intended that courts give any special weight to DOT's view of the Rehabilitation Act, a statute it is not charged with administering and in respect to which it has no special expertise.... Regardless, the various factors relevant to a court's decision about whether and to what extent to defer to an agency's view of a statute, ... like the factors that help determine whether the statute applies at all, are identical whether one calls the action an implied private right of action, or APA review. And, being identical, these factors should lead to the same conclusion irrespective of the label one applies to the action.

*Id.* at 609–10. Similarly, the Peace Corps must comply with the Rehabilitation Act whether its actions are being reviewed pursuant to a private right of action under § 504 or under the APA.

Plaintiff next contends that APA review is inappropriate because the Peace Corps does not have the resources to make the type of decisional record that is necessary for APA review. A court typically reviews an agency decision under the APA on the basis of the record compiled by the agency in making the challenged decision. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1970). Judicial review is

made on the administrative record already in existence and not on new evidence presented for the first time before the district court. *See Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

Plaintiff could submit all the evidence and legal arguments she wants this court to consider to the Peace Corps in the first instance. The Peace Corps would then have all that information before it when reviewing its decision to disqualify plaintiff from volunteer service. That same information would be part of the record the district court considers pursuant to APA review. In other words, there is no reason a plaintiff will be disadvantaged by having to first present her evidence to the Peace Corps.

Moreover, if aggrieved volunteers are permitted to pursue their handicap discrimination claims directly under § 504, the judiciary, on a case-by-case basis, will have first crack at determining who is qualified to volunteer. This result would be contrary to the APA's purpose of having federal agencies make such decisions in the first instance instead of the courts. This is especially important in this case because plaintiff is requesting that the court order the Peace Corps not to bar any applicants from service because they carry the chronic hepatitis B virus. Such broad relief affects the central function of the Peace Corps—to select qualified individuals ·for volunteer service abroad. As a result, it is a decision that the Peace Corps should be given the first opportunity to make based on all the relevant evidence plaintiff offers.

Plaintiff's final argument against APA review is that it will prove inadequate because the APA does not contain a damages remedy. The plaintiff points out that in *Cousins* the First Circuit specifically noted that APA review was appropriate in part because the plaintiff in that case was requesting only equitable relief. *Id.* at 606. Thus, plaintiff appears to argue that this court should hold that plaintiff has a private right of action under § 504 so that she may state a claim for damages.

■ Plaintiff's contention lacks merit. The court cannot hold that there is a private right of action for damages against the federal government on the ground that a plaintiff cannot recover damages under an APA action. A waiver of the government's sovereign immunity must be unequivocally expressed and not implied. *See Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). The *Cousins* court found that there was no such waiver when governmental regulatory action is involved and APA review is available. Congress thus did not provide persons aggrieved by agency action with a damages action against the government, and this court may not now simply hold that one exists by implication.

In summary, I conclude that the Peace Corps' decision to medically disqualify plaintiff from UNV service is an agency decision that may appropriately be reviewed under the APA. Accordingly, plaintiff's claim pursuant to § 504 of the Rehabilitation Act must be dismissed.

## IV. *APA Review*

■ As explained in Part III, *supra*, this court does not have jurisdiction to hear plaintiff's claim directly under § 504. Plaintiff's complaint, however, can be read as requesting APA review, at least in the alternative. *See Cousins*, 880 F.2d at 605 (stating that it is preferable to call a § 504 action against a federal agency a request for APA review). Count II of plaintiff's Complaint alleges that the Peace Corps violated § 504 of the Rehabilitation Act, and plaintiff's prayer for relief requests "other and further relief as this court sees just and proper." Thus, this court has jurisdiction under the APA to review the Peace Corps' decision to medically disqualify plaintiff to determine if accordance with law." 5 U.S.C. § 706(2). In other words, this court has APA jurisdiction to determine whether the decision violated the Rehabilitation Act. In making such a determination the court must rely on the record before the Peace Corps when it made its decision, and should not consider *ex post facto* evidence that was not before the agency at the time the Peace Corps made

its decision. *See Camp*, 411 U.S. at 142, 93 S.Ct. at 1244.

■ At trial the Peace Corps argued that there were two reasons for its decision to disqualify plaintiff. First, the Peace Corps argued that plaintiff's chronic hepatitis B condition is contagious and that the Peace Corps, as the sponsoring agency for American UNV participants, cannot accept the risk of exporting contagious diseases to Third World countries. Second, the Peace Corps contended that because of her chronic hepatitis B condition, plaintiff may encounter further diseases such as cirrhosis of the liver, cancer and hepatitis D. Because UNV participants are generally sent to remote areas of countries where there is little medical care immediately available, the Peace Corps would not be able to guarantee that plaintiff would have adequate medical care available wherever she is assigned.

Plaintiff offered the testimony of her own expert that she was not a risk to others because hepatitis B can be transmitted only through sexual activity or blood transfusions—two activities that are easy to avoid. In addition, her expert testified that the remoteness of potential assignments is not a danger to plaintiff's health because the type of illnesses plaintiff may be at risk of developing are diseases that progress slowly and would not require immediate medical attention.

None of the expert testimony presented to the court at trial appears to have been before the Peace Corps Medical Review Board ("Board") at the time they made their decision to disqualify her. The Board apparently did have before it the medical report of plaintiff's physician, Dr. Keeffe, and several letters Dr. Keeffe wrote the Board stating that he believed plaintiff to be medically qualified. In addition, the defendant did provide testimony that the Board relied primarily on Peace Corps guidelines to disqualify plaintiff. The government placed those guidelines into evidence at trial only after the court specifically requested them. The government did not offer any evidence, however, as to how those guidelines were developed. Who de-

veloped them? Upon what medical expertise are the guidelines based? Thus the only record of what was before the Board at the time of its decision appears to be Dr. Keeffe's report and recommendations and the unsubstantiated screening guidelines. This record alone does not support the Peace Corps' contention that plaintiff is not "otherwise qualified."

■ Plaintiff argues that the failure of the Peace Corps to create a record of its decision to disqualify plaintiff is an example of why APA review is not appropriate in this case. I cannot sustain that contention. It is true that the Peace Corps has failed to make a record of its decision as is required by law. It is equally true that the court cannot accept the Peace Corps' decision that plaintiff is not medically qualified without being able to examine the evidence and reasoning upon which the Board relied. Judicial review in such a case would be meaningless. *See We Who Care, Inc. v. Sullivan*, 756 F.Supp. 42 (D.Me.1991). The solution, however, is not for this court to hold that plaintiff has a private right of action under § 504.

In *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), the Supreme Court stated:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant facts, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

*Id.* at 744, 105 S.Ct. at 1607. Here, all three of these circumstances are present. The skeleton record that appears to have been before the Board does not support the agency's decision to medically disqualify plaintiff for UNV service. In addition, it appears the agency has not considered all relevant factors, including what reasonable accommodation could be made for plaintiff. Third, this court simply cannot evaluate the Peace Corps' decision on the basis of the bare record of the agency's decision.

Accordingly, I conclude that defendant's motion to dismiss must be denied, and that this case should be remanded to the Peace Corps for reconsideration of its decision to medically disqualify plaintiff. This procedure seems particularly appropriate in this case because neither party entered this lawsuit with the belief that the APA was the appropriate law under which plaintiff's claim should be brought. In addition, ordering the Peace Corps to create a record of its reasons for disqualifying an applicant with chronic hepatitis B will allow a court to determine if the medical guideline should be struck down—relief specifically requested by plaintiff. This court simply cannot make such a determination on the bare record that now exists.

Final judgment, remanding this action to the Peace Corps for reconsideration shall be issued forthwith. In addition, reasonable costs will be awarded to the plaintiff. This decision is based on the fact that although the plaintiff did not prevail on her § 504 claim for damages, she did convince the court that the Peace Corps must reconsider its decision. Moreover, many of the costs associated with this action could have been avoided if the government had made its motion to dismiss earlier in this litigation, leading to an earlier focus upon the issues that I have now concluded are dispositive. Finally, remand, rather than a decision on the merits, is necessitated by the fact that the Peace Corps did not create an adequate record of its decision.

## FINAL JUDGMENT

For the reasons stated in the Opinion of this date, it is hereby ORDERED:

(1) Count I of the Complaint is dismissed.

(2) Plaintiff's claim in Count II for relief under an implied private right of action is dismissed.

(3) Plaintiff's alternative claim in Count II for review under the Administrative Procedures Act is allowed. The determination against plaintiff is vacated, and the matter is remanded to the United States Peace Corps for further proceedings.

(4) Costs are awarded to plaintiff.