Michael COUSINS, Plaintiff, Appellant,

v.

SECRETARY OF THE UNITED STATES DEPARTMENT OF TRANSPORTATION, Defendant, Appellee.

No. 88–1106.

United States Court of Appeals, First Circuit.

Heard June 7, 1988.

Decided July 24, 1989.

Harold L. Lichten, Lewiston, Me., Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., Marc P. Charmatz, Washington, D.C., and Sarah S. Geer, Nat. Ass'n of the Deaf Legal Defense Fund, Alexandria, Va., and Sy Dubow and E. Elaine Gardner, Nat. Center for Law and the Deaf, Washington, D.C., on brief, for plaintiff, appellant.

Stewart E. Schiffer, Acting Asst. Atty. Gen., Richard S. Cohen, U.S. Atty., Augusta, Me., and Michael Jay Singer and Robert K. Rasmussen, Appellate Staff, Civ. Div. Dept. of Justice, Washington, D.C., on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BOWNES, BREYER, TORRUELLA and SELYA, Circuit Judges.

## OPINION EN BANC

BREYER, Circuit Judge.

Appellant Michael Cousins, who is deaf, obtained a Maine driver's license permitting him to drive a truck with a tractor trailer. A federal Department of Transportation (DOT) rule, however, prevents him from working as a truck driver. 49 C.F.R. § 391.41(b)(11) (1987) (a "person is physically qualified to drive a motor vehicle if that person ... [f]irst perceives a forced whispered voice in the better ear at not less than 5 feet"). Although the DOT regulations allow drivers to apply for a waiver of some of the required physical qualifications, they do not allow waiver of the requirement that excludes deaf persons. 49 C.F.R. § 391.49(a). Cousins, nonetheless, asked for a waiver, DOT refused to consider his request, and Cousins then sued DOT in the Maine federal district court, claiming that DOT's regulations and its refusal to grant him a waiver violate the Constitution's Fifth Amendment and § 504 of the Rehabilitation Act of 1973, which says that

> No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, ... be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency.

29 U.S.C. § 794 (1982).

The district court noted that Cousins called his suit an "implied private right of action" arising under § 504. 674 F.Supp. 360 (D.Me.1987) The court believed that he should instead have referred to his suit as a request for "review of agency action" arising under the Administrative Procedure Act, 5 U.S.C. §§ 701–706. The court therefore dismissed the suit without prejudice to Cousins' filing a new suit, referring to the proper statute. Rather than file a new suit, Cousins appealed to this court. A panel of this court reversed the dismissal, remanding the case to the district court for trial. *Cousins v. Secretary of U.S. Department of Transportation*, 857 F.2d 37 (1st Cir.1988). We now reconsider that decision *en banc*. We take an approach different from that argued by either side to the panel, but one that we believe principles of administrative law require. We conclude that the district court was correct in dismissing the action.

In a sense the parties are arguing about labels rather than substance. But, we believe that the argument has practical significance. If Cousins had applied the "APA" label, which in our view is the proper one, he would have brought his claim in a different court, namely this court. We also believe that Cousins' arguments—seeing § 504 and the APA as setting forth *different* routes to obtain review of federal agency action—somewhat misconceive the nature of the APA. Section 504 and· the APA are not rivals. Congress did not intend the APA to limit review available elsewhere. Rather, the APA was intended to organize and unify preexisting methods of obtaining judicial review of agency action, *e.g.*, by making it clear that anyone "adversely affected or aggrieved within the meaning of a relevant statute" could obtain review of "agency action." 5 U.S.C. § 702. A system of administrative law that seeks regularity and hopes to avoid confusion should offer a plaintiff such as Cousins a § 504 action, but one that is securely embraced within the uniform procedural confines of the APA. And, we think that the APA not only should, but does, offer Cousins the type of review that he seeks.

To be more specific, after considering the parties' arguments on this appeal, we conclude that:

1. The district court is correct about the label that Cousins should apply to his suit. The appropriate label is "review of agency action" under the APA, not "implied private right of action" under § 504, the latter label being one that the law typically reserves for an entirely different situation.

2. This difference in labels should not significantly affect Cousins' substantive rights. That is to say, it should not make a significant difference to Cousins' chances for success on the merits or to the substantive law that applies to his claim.

3. This difference in labels does have a procedural effect, for the APA, and other procedural statutes that it incorporates by reference, indicate that Cousins should have filed his action for review in this court, not in the district court.

We shall explain how we arrive at each of these conclusions, in turn.

1. Cousins wishes to challenge the lawfulness, under § 504, of DOT's refusal to amend, modify, or waive its regulation preventing him from driving a truck. He called his claim an "implied private right of action under § 504" because he believed that Congress intended to allow him to raise this type of challenge even though § 504 does not *expressly* provide a remedy for one harmed by a federal agency's regulatory action. The Rehabilitation Act does expressly provide for private enforcement actions against "any recipient of Federal assistance or Federal provider of such assistance," *see* § 794a(a)(2), and it also expressly provides for actions against the federal government as an employer, *see* § 794a(a)(1). But even though § 504's substantive standard applies, more broadly, to "any program or activity conducted by any Executive agency" (presumably including regulatory programs), the Act is silent about whether and how a person injured by the government *as regulator* is to enforce the Act against the government. Cousins would cure this omission by implying a private right of action under § 504. We believe, however, that the omission simply reflects the fact that such a person already has a right to judicial review, as set forth in the APA.

We believe it preferable to call Cousins' lawsuit a request for APA review, and not an exercise of an implied private right of action under § 504, for reasons that we set forth in *N.A.A.C.P. v. Secretary of Housing & Urban Development*, 817 F.2d 149 (1st Cir.1987). For one thing, given the vast number of federal laws, government agencies, and potential legal disputes, it makes sense to try to maintain a clear, orderly procedural way for injured persons to bring their claims against federal agencies before the courts. The APA was intended to provide just such a single uniform method for review of agency action. *See* 1946 U.S.Code Cong. & Admin.News, 1205 (the APA "sets forth a simplified statement of judicial review designed to afford a remedy for every legal wrong"); House Judiciary Committee Report, H.R.

Rep. No. 1980, 79th Cong., 2d Sess. (1946) 275 (§§ 701–706 "require[ ] adequate, fair, effective, complete, and just determination of the rights of any person in properly invoked proceedings"); S.Rep. No. 442, 76th Cong., 1st Sess. (1939) 9–10 (concerning earlier version of the APA) ("unfortunately," existing statutes do not provide for "a uniform method and scope of judicial review"); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) ("legislative material ... manifests a congressional intention that it cover a broad spectrum of administrative actions, and this Court has echoed that theme by noting that the [APA's] 'generous review provisions' must be given a 'hospitable' interpretation"). The APA was designed to supplant a variety of pre-existing methods for obtaining review that differed from one agency to another and sometimes hindered the efforts of injured persons to obtain relief. *See* Report of the Attorney General on Administrative Procedure in Government Agencies, S. Doc. No. 8, 77th Cong., 1st Sess. (1941) 79–92. To allow actions for review of agency action once again to proliferate under a variety of names would threaten a return to pre-APA confusion.

Further, as we explained in *N.A.A.C.P.*, 817 F.2d at 152–53, in light of the existence of the APA, it rarely makes sense to find that a substantive statute creates an "implied private right of action" against the federal government for relief from unlawful regulatory action. The concept of an implied private right of action serves a useful legal purpose elsewhere in the law, when a plaintiff seeks to enforce a federal statute against a *non*-federal person. In such cases, the question arises whether "Congress meant to give an injured person a right himself to enforce the federal statute directly against the non-federal person or whether the injured person can do no more than ask the federal government to enforce the statute." *Id.* at 152; *see, e.g., California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Without such an implied right of action, the plaintiff would have no remedy against such a non-federal person. But when a plaintiff seeks to enforce a federal statute against a federal regulatory agency, there is normally no *need* for an "implied private right of action." The general provisions for judicial review of agency action, as embodied in the APA, offer adequate relief. Since the APA offers a set of general rules for judicial review, *see* 5 U.S.C. §§ 701–706, since it incorporates by reference other, more specific statutory procedures, *see* 5 U.S.C. § 703, and since it tends to expand relief beyond what other statutes offer, not to contract it, *see, e.g.,* § 706(2)(A) (forbidding "arbitrary, capricious" agency action), it is difficult to imagine a case where an implied private right of action under some other statute would be of much use to a plaintiff who wants to challenge agency action.

In an effort to find some conceivable function for the "private right of action" concept in the context of a suit against the federal government, we said in *N.A.A.C.P.* that it might make sense to ask whether a substantive statute gives rise to such a right in certain exceptional cases, where, for example, a plaintiff seeks to challenge the action of "one of the few federal bodies exempted from the APA's coverage," such as Congress, the courts, territorial governments, and military bodies. *Id.* at 153. In the same vein, we noted that when a substantive statute allows an award of attorneys' fees for its successful enforcement, the court would then have to "determine whether the action arises under the *particular* act or whether it is simply a general APA-based request for judicial review," *id.,* so as to decide whether to award fees in an action against a federal agency. We did not mean to suggest, however, that whenever a substantive statute contains a general attorneys' fees provision, there is an implied private right of action against the federal government. After all, one can sometimes obtain attorneys' fees in an ordinary APA action, under the Equal Access to Justice Act, 28 U.S.C. §§ 2412(b), 2412(d)(1)(A) (authorizing award of fees

against the government "in any civil action ... to the same extent that any other party would be liable under the common law or under the terms of any statute that specifically provides for such an award," and providing that the court "shall" award fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust"). Rather, we simply meant that the presence of an explicit attorneys' fees provision might be one indication of congressional intent to allow such an action. *See, e.g., Cannon*, 441 U.S. at 699–701, 99 S.Ct. at 1958–60 (explicit authorization of fee awards against federal government indicates intent to create private right of action under Title VI).

The Rehabilitation Act does contain a general provision for fee awards. 29 U.S. C. § 794a(b) (fees may be awarded to prevailing party in "any action ... to enforce or charge a violation of a provision of this subchapter"). The fees provision does not, however, specifically refer to actions against the government, nor is there any other indication that it is meant to imply that a plaintiff can sue federal agencies directly under § 504, rather than within the confines of the APA. The most likely interpretation of this fees provision is that it applies directly in respect to the express rights of action stated in the same section, *see* § 794a(a), but, in respect to other actions involving the Act (such as APA review of agency actions), it applies indirectly, under the Equal Access to Justice Act, 28 U.S.C. § 2412(b) (allowing fees against the government "in any civil action ... to the same extent that any other party would be liable ... under the terms of any statute which specifically provides for such an award"). Thus, we do not think that the mere presence of an attorneys' fees provision means that the Rehabilitation Act creates an implied private right of action against federal agencies. Instead, we think that the basic rule articulated in *N.A. A.C.P.* applies:

> One would ordinarily expect ... that when Congress means to permit a private party to ask a court to review the legality of federal actions in a manner

that differs from APA review, Congress will say so explicitly in the statute.... Otherwise, it is reasonable to assume that Congress meant the APA to govern.

*Id.*, 817 F.2d at 153. Congress has not said or suggested, anywhere in the Rehabilitation Act or its legislative history, that the Act was meant to give rise to a right of action against the government as a regulator, distinct from the general, background right to challenge regulatory action under the APA.

Cousins argues, however, that a recent Supreme Court case, *Traynor v. Turnage*, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988), holds that § 504 creates a private right of action against federal regulatory agencies. We do not see how this is so. In *Traynor*, the Supreme Court reviewed two consolidated cases. In the first, *Traynor v. Walters*, 606 F.Supp. 391 (S.D.N.Y.1985), the plaintiffs' complaint said that certain Veterans Administration regulations (which classified alcoholism as "willful misconduct," thereby disqualifying persons disabled by alcoholism from receiving certain benefits) violated the APA, the Constitution, and § 504. The district court held: (1) 38 U.S.C. § 211(a), a statute barring judicial review of certain VA decisions, does not deprive the court of jurisdiction, *id.* at 396; (2) the regulations have a "rational basis" and so survive constitutional challenge, *id.* at 398; but (3) the regulations violate § 504 because the VA did not make a "substantial showing that the regulations were justified," *id.* at 401. The district court did not explicitly discuss plaintiff's APA claim. The VA appealed. The Second Circuit reversed on the ground that 38 U.S.C. § 211(a) precludes judicial review. *Traynor v. Walters*, 791 F.2d 226, 231 (2d Cir.1986). In the second case, *McKelvey v. Walters*, 596 F.Supp. 1317 (D.D.C.1984), the plaintiff's complaint did not refer to the APA, but simply said the regulations were unconstitutional and violated § 504. The district court held that: (1) § 211 does not preclude jurisdiction, *id.* at 1321; (2) the regulations did not violate the APA, *id.* at 1322, but (3) the regulations violated § 504, *id.* at 1324. The VA

appealed. The D.C. Circuit reversed, saying that the regulations were reasonable and did not violate § 504. *McKelvey v. Turnage*, 792 F.2d 194, 202–03 (D.C.Cir. 1986). The Supreme Court agreed with the D.C. Circuit. It held that § 211 did not deny the courts jurisdiction to review the lawfulness of the regulations, *id.* 108 S.Ct. at 1380, and that they were not inconsistent with § 504, *id.* at 1383.

We cannot interpret *Traynor* as holding that the APA is inapplicable, or that § 504 gives an injured person something called an "implied private right of action against federal regulatory agencies," for two reasons. First, the Supreme Court simply does not discuss the matter. *See Webster v. Fall*, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the Court nor ruled upon, are not to be considered as having been so decided as to constitute precedents"). The Supreme Court said that the issues before it were (1) whether § 211 denied the courts jurisdiction to review the VA regulations, and (2) if not, whether the Rehabilitation Act barred the VA from characterizing alcoholism as "willful misconduct" in its regulations. *Traynor*, 108 S.Ct. at 1378. We have no reason to believe that any party in the *Traynor* cases briefed or argued the question whether one should call plaintiffs' challenge to the VA regulations a private right of action under § 504 itself, or a request for APA review.

Second, the Supreme Court's omission of any reference to the APA does not mean that the Court believed § 504 creates a private right of action distinct from the APA. The Court, instead, may have simply not discussed a rather technical fact concerning the APA that none of the parties cared about, namely, that the APA gives a court power to "hold unlawful and set aside" not only agency action that is "arbitrary" or "capricious," but also agency action that is "otherwise not in accordance with law" or is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A, C). Courts and litigants may typically refer to the first, "arbitrary, ca-

pricious" type of legal challenge, in a shorthand matter, as an "APA challenge," and they may refer to the question whether the regulations violate a substantive statute as a challenge under the statute itself. But technically this latter challenge falls within the purview of the APA, just as the former does. *See* pp. 608–609, *infra*. We therefore cannot take the fact that the Supreme Court referred to the question before it as one of whether the regulations violated § 504 as a holding, *sub silentio*, that ordinary principles of administrative law do not apply when the Rehabilitation Act is at issue, and that the Act tacitly creates a rather unusual legal animal called a "private right of action against the federal government."

2. In our view, this issue of terminology does not have the adverse legal consequences that Cousins fears. First, Cousins fears that if his suit is subject to the APA, he cannot obtain relief by showing that DOT's regulations violate § 504. But that is not so. Section 504 clearly seems to apply to DOT's actions and omissions; it says that no "program or activity conducted by any Executive agency" can subject a handicapped person to discrimination. 29 U.S.C. § 794. And, as we have just said, the APA, in addition to telling courts to "hold unlawful and set aside" agency action that is "arbitrary" or "capricious," also tells them to set aside agency action that is "otherwise not in accordance with law" or is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A, C). These words are general in their meaning; they do not restrict the courts to consideration of the agency's own enabling statute. And, the legislative history of the APA indicates that they mean what they say. The House Judiciary Committee Report explains, in respect to the general right of judicial review stated in 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action ... is entitled to judicial review"), that:

> The phrase "legal wrong" means such a wrong as is specified in [§ 706] ... a complainant, in order to prevail, must

show that the action is contrary to law in either substance or procedure. The law so made relevant is not only constitutional law but *any and all applicable law.* H.R.Rep. No. 1980, 79th Cong.2d Sess., 276 (1946) (emphasis added); *see* S.Rep. No. 752, 79th Cong., 1st Sess. 212 (1945) ("The phrase 'legal wrong' means such a wrong as is specified in [§ 706];" plaintiffs must show an "illegal effect" of agency action, and the relevant law "is not just constitutional law but any and all applicable law"); *see also Labor Board v. Brown,* 380 U.S. 278, 292, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965) (courts must set aside agency decisions "which rest on an 'erroneous legal foundation' "); *Cape May Greene, Inc. v. Warren,* 698 F.2d 179, 190 (3d Cir.1983) ("Another shadow is cast" on the legality of agency action under the APA "when agency action, not clearly mandated by the agency's statute, begins to encroach on congressional policies expressed elsewhere"); *Westinghouse Electric Corp. v. United States,* 598 F.2d 759, 770 n. 46 (3d Cir.1979) (under § 706(2), court can overturn agency decision "if it violates any constitutional or statutory provisions"); *Zabel v. Tabb,* 430 F.2d 199, 209 (5th Cir. 1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 873, 27 L.Ed.2d 808 (1971). Also, numerous circuit court decisions have simply assumed that a plaintiff may challenge agency action under the APA on the grounds that it conflicts with a federal statute other than the agency's enabling statute. *See, e.g., Cape May Greene,* 698 F.2d at 191–92; *State of Nebraska Military Dept. v. F.L. R.A.,* 705 F.2d 945, 948 (8th Cir.1983); *I.R.S., Fresno Service Center v. F.L.R.A.,* 706 F.2d 1019, 1023 (9th Cir.1983); *N.J. Air National Guard v. F.L.R.A.,* 677 F.2d 276, 281–82 (3rd Cir.1982); *Oglala Sioux Tribe of Indians v. Andrus,* 603 F.2d 707, 714 (8th Cir.1979).

There are two arguably contrary cases, *Davidson v. United States Department of Energy,* 838 F.2d 850 (6th Cir.1988) and *Cleghorn v. Herrington,* 813 F.2d 992 (9th Cir.1987). *Cleghorn* involved a challenge to a federal agency's regulations about qualifications for employment by the agency's private contractors. The plaintiffs said that these regulations had a discriminatory impact. The Ninth Circuit held that the APA challenge, in effect, was an effort to assert a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), without following the "numerous procedural and substantive requirements of Title VII." *Id.,* 813 F.2d at 995. Since the APA itself says that the "form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter," 5 U.S.C. § 703, we agree with the *Cleghorn* court that the APA cannot be used to circumvent the specific procedural requirements of other substantive federal statutes. But we do not agree with the broader view, suggested in *Cleghorn,* 813 F.2d at 994, and explicitly adopted in *Davidson,* 838 F.2d at 854–55, that a challenge to agency action on the ground that it conflicts with a substantive federal statute (such as the Rehabilitation Act) must always be brought under that statute, and not under the APA. Such a view seems contrary to the APA's language and intent, and to the well-established authority we have cited above. *See* pp. 608–609, *supra.*

Cousins also fears that when the courts conduct APA review, they will tend to give special weight to the agency's views in determining the lawfulness of agency action. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer"); *Motor Vehicle Manufacturers Assn. v. State Farm Mutual,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) ("a court is not to substitute its judgment for that of the agency" in APA review). That deference, Cousins says, will mean that an APA action challenging the DOT regulations on the ground that they conflict with § 504 will prove inadequate.

The short answer to this argument is that DOT must comply with whatever legal requirements § 504 places upon it. The special weight that the courts might give to

DOT's position normally arises out of a determination of congressional intent. *See Mayburg v. Secretary of Health & Human Services,* 740 F.2d 100, 106 (1st Cir.1984). One might infer such an intent, in respect to DOT's interpretation of the highway safety statutes it administers, but it is far less likely that Congress intended that courts give any special weight to DOT's view of the Rehabilitation Act, a statute it is not charged with administering and in respect to which it has no special expertise. *Cf. Nebraska Military Dept.,* 705 F.2d at 948 (agency's view not entitled to deference in deciding whether the statute it administers conflicts with another statute, and if so, how to resolve the conflict); *I.R.S., Fresno Service Center,* 706 F.2d at 1023 (same); *New Jersey Air National Guard,* 677 F.2d at 282 n. 6 (same). Regardless, the various factors relevant to a court's decision about whether and to what extent to defer to an agency's view of a statute, *see Mayburg,* 740 F.2d at 106, like the factors that help determine whether the statute applies at all, are identical whether one calls the action an implied private right of action, or APA review. And, being identical, these factors should lead to the same conclusion irrespective of the label one applies to the action.

Finally, Cousins fears that the procedure the APA offers him is less desirable. APA review typically takes place on the basis of a record compiled by the agency in making the challenged decision. *See Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (under § 706(2)(A), "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court"); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971) (APA review "is to be based on the full administrative record that was before the [agency head] at the time he made his decision"). A direct action under § 504, Cousins says, would give him a chance to build a record in the district court, concerning, *e.g.,* the impact of DOT's regulation on deaf drivers, technological advances making it possible for deaf persons to drive

safely, and his individual qualifications to drive. He says APA review is therefore inadequate, citing *Baker v. Bell,* 630 F.2d 1046, 1057 (5th Cir.1980) (in § 504 challenge to agency action, "review of the administrative record under the strictures of the 'arbitrary and capricious' standard of review of agency action specified by the APA ... does not afford the plaintiff the same degree of direct relief as would a *de novo* review upon a record compiled by the district court").

We agree that the record-building procedures may differ under the APA, a difference that reflects the legal principle of permitting agencies to deal thoroughly in the first instance with issues like the present one. But, we doubt that this difference places Cousins at a serious disadvantage. If Cousins again asks DOT to waive the application of its rules, or if he requests a rule change, he can submit to DOT all the evidence and legal arguments that he would like to include in the record for judicial review. As DOT wrote to Cousins' lawyer:

> If your client desires to petition for a rule change to allow hearing-impaired drivers to drive in interstate commerce, a copy of Part 389, Rulemaking Procedures, is enclosed. It outlines the steps for preparing such a petition. Information, views, arguments, delineating criteria, and statistical data are needed showing cause why the rule should be changed. The petition should be addressed to the Director, Bureau of Motor Carrier Safety, at the above address.

If Cousins were to follow this procedure, he could create a record encompassing all the evidence and arguments he seeks to present to the district court. DOT would then have a chance to consider this information; and, if DOT refuses Cousins' request, the same information will make up part of the record on appeal.

In sum, the APA's review procedures seem an appropriate way for Cousins to challenge the agency action here at issue. There is no reason to strain to find an implied right of action against federal agencies under § 504. If DOT has any

consequent advantage, that advantage is due to Congress' decision to have transportation safety regulated in the first instance by a federal agency instead of by the courts, and not to the label we apply to the action.

3. The major difference that the labeling of this action will make is jurisdictional. Congress has specified how an injured party is to obtain judicial review of a DOT driver safety decision. When Congress transferred the authority to regulate highway safety, among other things, from the Interstate Commerce Commission to the DOT in 1966, it said that

> Orders and actions of the Secretary [of DOT] in the exercise of functions, powers, and duties transferred under this chapter ... shall be subject to judicial review to the same extent and in the same manner as if such orders and actions had been by the department or agency exercising such functions, powers, and duties immediately preceding their transfer.

49 U.S.C.App. § 1653(c). A different section of that chapter transferred to the DOT, from the ICC, the authority to make rules "relating generally to qualifications ... of employees and safety of operation and equipment." 49 U.S.C.App. § 1655(e)(6)(C) (1976). (49 U.S.C.App. § 1655(e)(6)(C) was repealed in 1983, and replaced by 49 U.S.C.App. § 3102(b), but Congress specifically said that this recodification was not intended to effect any substantive change. *See* § 5, Pub.L. No. 98–216, 98 Stat. 7 (1984), *reprinted in* note preceding 49 U.S.C.App. § 101 (1989).) Thus, the ICC was the "agency exercising" driver safety regulation "functions ... immediately preceding their transfer" to DOT, and judicial review of DOT's exercise of these functions must take place "in the same manner as" it would if the ICC exercised them. 49 U.S.C.App. § 1653(c).

Prior to 1975, judicial review of this type of ICC determination would have taken place in a three-judge district court. 28 U.S.C. § 2325. But, in 1975, Congress abolished this type of review and instead provided for direct review of ICC orders in courts of appeals. 28 U.S.C. § 2342(5) (1982). Congress did not simultaneously say that review of DOT orders, which also, under § 1653(c), had taken place in three-judge district courts, would also now take place in the courts of appeals; but that does not necessarily mean that Congress wanted to treat DOT driver safety decisions differently. Instead, Congress likely did not realize that three-judge district court review still existed for any agency besides the ICC; the special situation of former-ICC-now-DOT driver safety decisions probably did not come to Congress' attention. *See* 1974 U.S.Code Cong. & Admin.News at 7026 (erroneously stating that "the [ICC] is the only remaining Federal agency whose decisions are routinely reviewed by ... three-judge courts").

Since the literal language of 49 U.S.C. App. § 1653(c) permits us to read it as accommodating the change that Congress made in respect to all ICC orders in 1975 when it abolished three-judge court review, and since it makes sense to maintain the special direct review that Congress provided for ICC orders in the very similar context of DOT safety regulations, we conclude that review of DOT's decisions on driver safety should take place "in the same manner" as review of ICC decisions now takes place, that is to say, in the courts of appeals. 28 U.S.C. § 2342(5). The government argues in favor of this result, the single court to have considered the issue reached the same conclusion, *see Schuler v. Federal Railroad Administration,* 404 F.Supp. 920, 921 (S.D.N.Y.1975), and it provides a more expeditious method of review than an action in district court. Moreover, Congress, when it most recently spoke about review of DOT's driver safety decisions, said that it should take place under the APA. 49 U.S.C.App. § 2505(g). The APA says that, where adequate, the "form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute." 5 U.S.C. § 703. Thus, the APA leads us back to the specific statutory method of review, and that specific method is review in a court of appeals,

612

under 49 U.S.C.App. § 1653(c) and 28 U.S.C. § 2342(5).

Because Cousins, now that he knows he must build a record before DOT, may wish to present additional material to DOT, we shall not review its decision now. Rather, we shall affirm the district court decision dismissing the complaint without prejudice. We specify, however, that this dismissal is also without prejudice to Cousins' again asking DOT for a waiver, or asking it for a rule change, and then seeking review of any adverse determination in a court of appeals.

*So ordered.*