Thomas S. TAYDUS, Plaintiff,

v.

Henry CISNEROS, Secretary of the United States Department of Housing and Urban Development, Defendant.

Civ. A. No. 94–10326–RCL.

United States District Court,
D. Massachusetts.

July 6, 1995.

Norman Jackman, Norma Roth, Jackman & Roth, Boston, MA, for Plaintiff.

Assistant U.S. Atty., Susan Poswistilo, Boston, MA, for Defendant.

LINDSAY, District Judge.

Report and Recommendation accepted.

### REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION TO DISMISS (DOCKET ENTRY # 7)

May 9, 1995

BOWLER, United States Magistrate Judge.

Defendant Henry Cisneros ("defendant"), Secretary of the United States Department

of Housing and Urban Development, moves to dismiss counts I, II, III and VII of the verified complaint on the basis of sovereign immunity, lack of a private cause of action and failure to state a claim under "Rule 12(b)."[1] (Docket Entry # 7). Plaintiff Thomas S. Taydus ("plaintiff") opposes dismissal. (Docket Entry ## 9, 15, 16 & 22). On January 11, 1995, this court held a hearing and took the motion to dismiss (Docket Entry # 7) under advisement. (Docket Entry # 17).

## PROCEDURAL BACKGROUND

Plaintiff, a former job applicant for a temporary position in a regional office of the United States Department of Housing and Urban Development ("HUD"), filed this employment discrimination action under various federal statutes. Plaintiff maintains that defendant violated: (1) section 4214 of The Veterans Readjustment Act ("VRA"), 38 U.S.C. § 4214, and section 791 of The Rehabilitation Act ("The Rehabilitation Act"), 29 U.S.C. §§ 701 et seq. (Count I); (2) section 2108 of The Veterans Preference Act ("VPA"),[2] 5 U.S.C. § 2108, 5 U.S.C.

§ 1302(b)[3] and the Rehabilitation Act (Count II); (3) the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. (Count III); (4) the Rehabilitation Act and section 3112 (Count IV); (5) the Federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA") (Count V); (6) the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Count VI) and (7) public policy (Count VII). (Docket Entry # 1).

Defendant initially moved to dismiss Count I (violation of the VRA and the Rehabilitation Act), Count II (violation of the VPA and the Rehabilitation Act), Count III (violation of the APA), Count IV (violation of section 3112 and the Rehabilitation Act) and Count VII (violation of public policy). (Docket Entry # 7). Defendant subsequently withdrew its motion to dismiss Count IV which defendant characterizes as arising under sections 791 and 794 of the Rehabilitation Act.[4] (Docket Entry # 13, n. 1).

Defendant first moves to dismiss the claims based on the VRA, the VPA, the APA and public policy on the basis of sovereign immunity. Second, defendant contends that

---

1. Defendant fails to designate what subsection of Rule 12(b) applies to the various arguments.

2. The Veterans Preference Act is codified in scattered sections of Title 5 of the United States Code. *Hill v. United States*, 571 F.2d 1098, 1101 n. 5 (9th Cir.1978).

3. In his opposition memorandum, plaintiff construes this statutory section as being part of the VPA. (Docket Entry # 9, p. 8). He also characterizes Count II as filed under the VPA. The verified complaint captions Count II as filed under the VPA and the Rehabilitation Act. Nowhere does the verified complaint or plaintiff's opposition memorandum note the existence of a claim under the Civil Service Reform Act ("CSRA"). Accordingly, this court does not construe the counts subject to the motion to dismiss in the verified complaint as seeking relief under the CSRA.

Section 3112 of Title 5 of the United States Code ("section 3112"), enacted as part of the CSRA, which plaintiff cites in Count IV, provides for veterans' preference to eligible, disabled veterans as follows:

§ 3112. Disabled Veterans; noncompetitive appointment

Under such regulations as [OPM] shall prescribe, an agency may make a noncompetitive appointment leading to conversion to career or career-conditional employment of a disabled

veteran who has a compensable service-connected disability of 30 percent or more.
5 U.S.C. § 3112.
As set forth generally in the legislative history for the CSRA, neither cited by or relied upon by either party, with regard to veterans' preference, the conference committee adopted the House version regarding competitive examinations which:

retains current law, under which only a ten point preference eligible has the right to reopen competitive examinations. The conference substitute adopts the House version.

*U.S.Code Congressional and Administrative News*, 95th Congress, Second Session, 1978 (1979), p. 2877.

4. To the extent counts I and II allege violations solely of the Rehabilitation Act, such claims, grounded on section 791 of the Rehabilitation Act, appear duplicative of the claim in Count IV based on section 701 of the Rehabilitation Act. Inasmuch as defendant withdraws its motion to dismiss Count IV arising, according to defendant, under section 791 of the Rehabilitation Act, plaintiff may bring the claims in Count I and II which are based solely on section 791 of the Rehabilitation Act in Count IV. The motion to dismiss, therefore, pertains to the alleged causes of action under the VPA, the VRA, the APA and public policy.

plaintiff has no express or implied private right of action under the VPA, the VRA or for a violation of public policy. Under this contention, defendant also argues that the statutory remedies available under the Civil Service Reform Act ("CSRA")[5] comprehensively address federal personnel matters and therefore preclude judicial review of "the veterans statutes."[6]

Third, defendant moves for dismissal on the basis of failure to state a claim for relief. Defendant maintains that the alleged violations of the VRA, the VPA and public policy are not subject to review under the APA because defendant's conduct lies within the statutory exception for acts committed to agency discretion. Defendant also submits that monetary damages are not available under the APA. Finally, defendant asserts that the equitable defense of laches precludes relief for wrongs committed in 1991. (Docket Entry ## 7, 13 & 18).

Defendant admits that plaintiff filed a timely discrimination claim and exhausted his administrative remedies pertaining thereto.

(Docket Entry # 3, ¶ 2). Facts, as set forth in the verified complaint, are as follows.[7]

## BACKGROUND

In July 1991 plaintiff, a 46 year old partially disabled Vietnam veteran, applied for one of 11 advertised temporary positions for management information specialists in HUD's regional office located in Manchester, New Hampshire. HUD advertised the six month positions at salary grade levels of five and seven.[8]

By letter dated July 25, 1991, HUD rejected plaintiff's application because he lacked the necessary grade point average to qualify under the Outstanding Scholar Program and had not taken the Administrative Careers with America Examination ("the ACWA exam"). A HUD official informed plaintiff that a veterans applicant under either the VRA or the VPA must take the ACWA exam in order to be considered for an opening.

The VRA directs The Office of Personnel Management ("OPM") to prescribe regulations "for veterans readjustment appoint-

---

**5.** The CSRA is codified in various sections of Title 5 of the United States Code. *Towers v. Horner*, 791 F.2d 1244, 1245 n. 3 (5th Cir.1987).

**6.** Defendant's supporting memorandum generally states that:
> HUD seeks dismissal of the plaintiff's action for all counts, except for the disability and age discrimination claims, for the reasons that the defendant has not waived sovereign immunity and the court therefore lacks jurisdiction; the plaintiff does not have a private right of action for these claims; and, the plaintiff has failed to state a claim upon which relief can be granted.
(Docket Entry # 7, p. 3). Defendant's supporting argument pertaining to the absence of a private right of action (Docket Entry # 7, pp. 6–9), however, nowhere mentions the APA claim, i.e., Count III. Instead, the argument begins by stating that plaintiff's "claims arising under the Veterans Preference Act, the Veterans Readjustment Act and the public policy of the United States must also be dismissed because there is no private right of action." (Docket Entry # 7, p. 6). Thereafter, defendant makes the familiar argument based on *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), as to these claims and, second, makes the argument that the comprehensive nature of the CSRA precludes review of "the veterans statutes," also referred to as the "veterans preference statutes," all without statutory citations. In general, "issues mentioned in a perfunctory manner, unac-

companied by some effort at developed augmentation, are deemed waived." *Collins v. Marina–Martinez*, 894 F.2d 474, 481 n. 9 (1st Cir.1990). Thus, this court does not construe defendant's arguments and motion as seeking dismissal of the APA count (Count III) on the basis of the absence of an express or implied private right of action.

**7.** Although this court may consider affidavits in the context of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), *Espinosa v. DeVasto*, 818 F.Supp. 438, 440 (D.Mass.1993), this court may not and does not consider matters extraneous to the complaint on a Rule 12(b)(6) motion to dismiss for failure to state a claim. Given the legal nature of the argument, neither party submitted affidavits outside the verified complaint to establish the factual background. This court therefore confines its review of the facts to those stated in the verified complaint.

**8.** Neither party submitted the relevant pay scale for the calendar year of 1991. Pay rates in 1991 in grades five and seven generally applicable to federal employees, of which this court takes judicial notice, ranged from approximately $16,973 to $22,067 for grade five and from $21,023 to $27,332 for grade seven. Consequently, plaintiff's claims for back pay for a six month period conceivably exceed $10,000.

ments and for subsequent career-conditional appointments" for eligible veterans. 38 U.S.C. § 4214(b)(1). Section 3112 similarly directs that a federal agency "may make a noncompetitive appointment" of a disabled veteran, such as plaintiff "[u]nder such regulations as [OPM] shall prescribe." 5 U.S.C. § 3112.

The pertinent provision of the Code of Federal Regulations permits the noncompetitive hiring of veterans and disabled veterans for temporary limited appointments. Section 316 provides that, "An agency may give a noncompetitive temporary limited appointment without regard to the existence of an appropriate register to" any veteran meeting the qualifications for a veterans readjustment appointment and to any disabled veteran with a disability of at least 30 percent. 5 C.F.R. § 316.402(b)(4) & (5).[9]

Due to HUD's insistence that plaintiff take the ACWA exam, plaintiff registered and passed the next scheduled ACWA exam. Plaintiff also contacted personnel at OPM's regional office in Boston, Massachusetts, who advised him that HUD could appoint eligible veterans noncompetitively. Upon apprising HUD's Acting Personnel Manager of this information on or about August 2, 1991, the manager declined to exercise his authority to rescind previously made but not accepted offers of employment for the specialist positions.

In late August 1991, after passing the ACWA exam, plaintiff applied for another position at HUD. Despite his qualifications and veterans status, defendant awarded the position to another candidate.

### DISCUSSION

■ Defendant first seeks to dismiss the VRA, the VPA, the APA and the public policy claims, i.e., counts I, II, III and VII, on the basis of lack of subject matter jurisdiction and sovereign immunity. (Docket Entry # 7). The burden rests "on the plaintiff to establish jurisdiction." *Markey v. United States*, 27 Fed.Cl. 615, 620 (Fed.Cir.), *affm'd*, 11 F.3d 1072 (Fed.Cir.1993). Re-

9. In other words, HUD had the ability to waive the ACWA exam for veterans such as plaintiff.

garding the above claims, the verified complaint cites 28 U.S.C. § 1331, the VRA, the VPA and the APA as setting forth the requisite jurisdictional basis.

■ On its face, the verified complaint falls within this court's federal question jurisdiction under 28 U.S.C. § 1331 ("section 1331"). *See Kanemoto v. Reno*, 41 F.3d 641, 643–644 (Fed.Cir.1994) (suit against Attorney General for restitution for Japanese ancestors interned during World War II). Section 1331's general grant of federal question jurisdiction, however, "does not by its own terms waive sovereign immunity and vest in district courts plenary jurisdiction" over claims for money judgments against the United States. *Sibley v. Ball*, 924 F.2d 25, 28 (1st Cir.), *affm'd*, 944 F.2d 913 (Fed.Cir.1991). Thus, plaintiff faces the issue of sovereign immunity which must be overcome in order to seek and obtain relief in this court. *See Kanemoto v. Reno*, 41 F.3d at 644.

■ " 'The terms of the sovereign's consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *Kanemoto v. Reno*, 41 F.3d at 644 (quoting *United States v. Sherwood*, 312 U.S. 584, 586–87, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941)); *accord Biase v. Kaplan*, 852 F.Supp. 268, 277 (D.N.J.1994) (quoting *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983) for principle that consent of United States " 'is prerequisite for jurisdiction' "). Stated otherwise, the United States can be sued only "when it has expressly given its consent to be sued." *Coleman v. Espy*, 986 F.2d 1184, 1189 (8th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 301, 126 L.Ed.2d 249 (1993). The waiver must be express, clear and unequivocal. *Coleman v. Espy*, 986 F.2d at 1189; *accord Sarit v. U.S. Drug Enforcement Administration*, 987 F.2d 10, 16 (1st Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993). Further, the language of any waiver of sovereign immunity is strictly construed in favor of the United States. *Markey v. United States*, 27 Fed.Cl. at 622.

Plaintiff has a disability of 40 percent.

The VRA does not purport to waive sovereign immunity. *See Heckman v. Olive,* 1992 WL 390249 at *6 (E.D.N.Y. Dec. 9, 1992), *affm'd,* 9 F.3d 1537 (2d Cir.1993) ("no provision in [38 U.S.C. §§ 4211–4214] purports to waive the sovereign immunity of the United States" nor authorize express or implied cause of action). Section 2108 of the VPA merely defines the eligibility of "veterans" and "disabled veterans." 5 U.S.C. § 2108. Thus, neither the sections at issue in the VRA nor the VPA contain express waivers of sovereign immunity. *See also Hill v. United States,* 571 F.2d 1098, 1101 n. 5 (9th Cir.1978) (finding "nothing" in VPA legislation suggestive of sovereign immunity waiver). In light of the absence of an explicit waiver of sovereign immunity, this court will not and cannot imply a waiver. *See Sarit v. U.S. Drug Enforcement Administration,* 987 F.2d at 16 ("Only an express waiver will give a court jurisdiction to hear a claim against the United States"); *Biase v. Kaplan,* 852 F.Supp. at 278 (consent by United States to be sued must be express). Public "policy, no matter how compelling, is insufficient, standing alone, to waive [sovereign] immunity." *Library of Congress v. Shaw,* 478 U.S. 310, 321, 106 S.Ct. 2957, 2965, 92 L.Ed.2d 250 (1986). Hence, the only logical waiver of sovereign immunity with regard to the alleged causes of action under the VPA, the VRA, the APA and public policy, arises, if at all, from the APA.

The APA contains a limited waiver of sovereign immunity for suits challenging agency actions seeking "relief other than money damages." 5 U.S.C. § 702; *see Sarit v. U.S. Drug Enforcement Administration,* 987 F.2d at 16 (APA contains limited waiver for claims seeking equitable relief); *Sibley v. Ball,* 924 F.2d at 28–29 (APA waives sovereign immunity for suits challenging agency actions but excludes suits seeking money judgments); *Biase v. Kaplan,* 852 F.Supp. at 278 n. 7 (APA does not waive sovereign immunity for suits seeking money damages). The 1976 amendment to the APA added the following language:

An action in a court of the United States seeking relief *other than money damages* [emphasis added] and stating a claim that

an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702; *see Ward v. Brown,* 22 F.3d 516, 520 (2d Cir.1994) (quoting and emphasizing above language in section 702). For example, similar to the present circumstances, the APA does not waive a claim for back pay brought by a disappointed applicant for federal employment. *Hubbard v. Administrator, E.P.A.,* 982 F.2d 531, 533 (D.C.Cir.1992) (back pay, similar to emotional harm suffered due to denial of application, constitutes "money damages" within meaning of section 702); *Ward v. Brown,* 22 F.3d at 520 ("back pay, as a claim for money damages, falls outside scope of the APA"); *see generally Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (discussing term "money damages" in section 702 and finding that not all aspects of monetary relief constitute "money damages"); *Commonwealth of Massachusetts v. Departmental Grant Appeals Board,* 815 F.2d 778 (1st Cir.1987) (decided prior to *Bowen* and discussing meaning of term "money damages" in section 702).

The verified complaint seeks "damages in the form of front and back pay, punitive damages, interest, costs and attorneys fees." (Docket Entry # 1). The parties' joint statement additionally requests relief in the form of vacation pay, sick leave, health insurance, an adjustment to plaintiff's service compensation date and emotional distress damages. (Docket Entry # 5). Hence, under the APA, plaintiff is not entitled to front pay, back pay, punitive damages, interest, vacation pay, emotional distress damages or "other money damages" within the meaning of section 702 of the APA. Plaintiff's cause of action, if any, under the APA is therefore limited to the foregoing relief.

Turning to the general provisions of the APA and subject to certain exceptions, the APA permits "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within

the meaning of a relevant statute" to obtain "judicial review." 5 U.S.C. § 702. The presumptive entitlement to judicial review under the APA "applies not only to agency action made reviewable by statute, but also to any other final agency action for which there is no other adequate remedy in a court." *NAACP v. Secretary of Housing & Urban Development*, 817 F.2d 149, 152 (1st Cir. 1987) (internal quotations of APA omitted). Agency review includes the ability to review the agency's adherence to applicable regulations and agency programs. *See, e.g., Community Action of Laramie County, Inc. v. Bowen*, 866 F.2d 347, 352 (10th Cir.1989) (collecting cases for principle that agency's "failure to follow its own regulations . . . may be challenged under the APA"). Thus, an individual, such as plaintiff, who is "adversely affected or aggrieved by agency action," such as HUD's failure to apply veterans preference and readjustment regulations in the context of his applications for employment,[10] *see, e.g.,* 5 C.F.R. §§ 307 and 316, "may ask a court to set aside the agency action which is "not in accordance with law or to compel agency action unlawfully withheld." *NAACP v. Secretary of Housing & Urban Development*, 817 F.2d at 152 (internal quotations of APA omitted).

 The APA organizes and unifies methods for obtaining judicial review of agency action "for which there is no other adequate remedy." 5 U.S.C. § 704; *Cousins v. Secretary of the U.S. Department of Transportation*, 880 F.2d 603, 605 (1st Cir. 1989) ("APA was intended to organize and unify preexisting methods of obtaining judicial review"). Neither party points to any express cause of action under the VPA or the VRA available to plaintiff's situation. *See generally Barron v. Nightingale Roofing, Inc.*, 842 F.2d 20 (1st Cir.1988) (no implied private right of action under former 38

U.S.C. § 2012); *Philippeaux v. North Central Bronx Hospital*, 871 F.Supp. 640, 647–648 (S.D.N.Y.1994) (no cause of action under section 523 of VPA); *Washington v. United States*, 1986 WL 726 at *2 (E.D.Pa. Jan. 6, 1986) ("VRA does not itself create any judicial or administrative remedies"). Nor, in light of the existence of the APA, does it make sense to imply a private right of action under either the applicable sections of the VPA or the VRA or for violations of public policy in order to enforce such statutory provisions against a federal agency such as HUD. *See Cousins v. Secretary of the U.S. Department of Transportation*, 880 F.2d at 606; *NAACP v. Secretary of Housing & Urban Development*, 817 F.2d at 152.

In other words, plaintiff has no express or implied cause of action under the VPA, the VRA or for violations of public policy. Although implied private rights of action serve useful purposes for plaintiffs seeking to enforce federal statutes against non-federal persons:

> when a plaintiff seeks to enforce a federal statute against a federal regulatory agency, there is normally no *need* for an "implied private right of action." The general provisions for judicial review of agency action, as embodied in the APA, offer adequate relief. . . . it is difficult to imagine a case where an implied private right of action under some other statute would be of much use to a plaintiff who wants to challenge agency action.

*Cousins v. Secretary of the U.S. Department of Transportation*, 880 F.2d at 606 (discussing absence of implied private right of action under section 504 of Rehabilitation Act against federal agencies). In light of the above as well as the finding in *Cousins* as to the Rehabilitation Act, Counts I, II and VII are properly dismissed.[11]

**10.** Plaintiff also complains about HUD's failure to rescind its offers of employment to other candidates once advised by plaintiff of the applicable policy. (Docket Entry # 1, ¶¶ 21 & 27–30).

**11.** Defendant argues in the alternative (Docket Entry # 7, pp. 7–9) that with regard to the veterans statutes, plaintiff lacks a private right of action under the sections at issue in the VPA and the VRA due to the comprehensive scheme for

federal personnel matters embodied in the CSRA. Notwithstanding the merit of such an argument, *see Harrison v. Bowen*, 815 F.2d 1505 (D.C.Cir. 1987) (comprehensively discussing framework of CSRA and finding nonveteran excepted employee not protected under CSRA, lacked private right of action under CSRA and lacked right to judicial review under APA); *Attwell v. Granger*, 748 F.Supp. 866, 870 (N.D.Ga.1990) (the plaintiff failed to show basis for court to review VPA

Defendant also argues that its conduct falls under the APA's exception for discretionary agency actions. According to defendant, its conduct, as set forth in Count III with regard to the APA, is not subject to judicial review. (Docket Entry ## 7 & 18).

■ Section 701(a)(2) of the APA precludes review of agency actions "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Defendant points out that the applicable statute and regulations, section 3112 and 5 C.F.R. § 316.402, provide that an agency "may" give a noncompetitive temporary appointment to an eligible or disabled veteran without requiring an ACWA exam. (Docket Entry # 7, p. 11). Notwithstanding the nonmandatory nature of such language, the verified complaint alleges that HUD declined to consider plaintiff's preferential eligibility as a disabled veteran even after plaintiff apprised the HUD official of the relevant policy. Assuming the truth of these allegations, an agency's refusal to consider applicable regulations as well as veterans policies set forth therein is reviewable under the APA. *See generally Davis Enterprises v. United States Environmental Protection Agency*, 877 F.2d 1181, 1184–1186 (3rd Cir. 1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990) (recognizing that absence of express statutory limits on agency discretion does not necessarily preclude judicial review).

Plaintiff's theory therefore differs from the plaintiff's theory in *Dijorio v. Secretary of Veteran Affairs*, 1994 WL 139269 (N.D.Ca. April 6, 1994), *affm'd*, 39 F.3d 1186 (9th Cir.1994). In *Dijorio*, cited by defendant, the plaintiff argued that the defendant was required to hire him. The pertinent VRA regulation, also at issue in this case, belied the plaintiff's theory inasmuch as it only directs that an agency "*'may* [emphasis added] appoint any veteran who meets the basic veterans readjustment'" requirements. *Dijorio v. Secretary of Veteran Affairs*, 1994 WL 139269 at *1 (N.D.Ca. April 6, 1994). Unlike the plaintiff in *Dijorio*, however, plaintiff seeks judicial review of the agency's failure to even consider the applicable regulations and its failure to consider plaintiff's eligibility for a waiver of the ACWA exam in light of his status as a disabled veteran.

"The Supreme Court ... has only under very special circumstances held that a court lacks the power to review a claim that an agency action violates a specific statute or the Constitution." *Ward v. Skinner*, 943 F.2d 157, 160 (1st Cir.1991), *cert. denied*, 503 U.S. 959, 112 S.Ct. 1558, 118 L.Ed.2d 207 (1992) (denial of waiver of safety regulation allegedly in contravention of the Rehabilitation Act did not fall within APA's discretionary exception to judicial review). None of these circumstances apply to plaintiff's situation. Consequently, for purposes of a motion to dismiss, defendant's argument is unavailing.

■ Defendant additionally submits that plaintiff's action seeking money damages in excess of $10,000 rests within the exclusive jurisdiction of the United States Court of Federal Claims ("Court of Federal Claims").[12] (Docket Entry # 7, p. 4). The motion seeking leave of court together with a motion to dismiss/or summary judgment and a supporting brief fully detailing the applicable law and the supporting argument as it pertains to the APA, as opposed to the "veterans statutes."

claim due to comprehensive nature of CSRA); *McGregor v. Greer*, 748 F.Supp. 881, 884 (D.D.C. 1990) (dismissing declaratory judgment count under APA due to exclusivity of CSRA remedies); *Fahy v. United States*, 14 Cl.Ct. 470, 473 (Cl.Ct.), *affm'd*, 864 F.2d 148 (Fed.Cir.1988), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989) (exclusivity of CSRA rights prevents implication of private rights of action regarding personnel actions taken against federal employees), this court need not and therefore does not address the argument. As explained in footnote number six, this court does not construe defendant's argument regarding the lack of a private right of action due to the comprehensive nature of the CSRA as seeking to dismiss the APA claim in Count III. In the event defendant wishes to properly raise such an argument, it should file a

12. In reply, plaintiff argues that his claims for money damages in excess of $10,000 flow from his discrimination claims which are not subject to defendant's motion to dismiss. (Docket Entry # 9). Plaintiff maintains that by virtue of HUD's failure to hire him he lost wages for a six month period which arguably amount to less than $10,000. This court doubts that plaintiff's claims for back pay, which as previously discussed are not cognizable anyway under the APA, do not exceed $10,000. *See* footnote number eight.

Tucker Act defines the limited jurisdiction of the Court of Federal Claims as covering claims:

> against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491. Section 1346, however, gives the United States District Courts concurrent jurisdiction over nontort claims against the United States not exceeding $10,000 founded "upon the Constitution, or any Act of Congress, or any regulation of an executive department." 28 U.S.C. § 1346(a)(2).

Contrary to defendant's position, the Tucker Act does not divest this court of jurisdiction over claims against the United States in excess of $10,000. *Ward v. Brown*, 22 F.3d at 519 (rejecting the "defendants' view that the Tucker Act divests a federal district court of its original jurisdiction over claims against the government for more than $10,000"). An action under this court's general federal question jurisdiction remains proper provided a statute exists waiving sovereign immunity.[13] *Ward v. Brown*, 22 F.3d at 519. As explained by the Supreme Court:

> It is often assumed that the Claims Court has exclusive jurisdiction of Tucker Act claims for more than $10,000 ... That assumption is not based on any language in the Tucker Act granting such exclusive jurisdiction to the Claims Court. Rather, that court's jurisdiction is "exclusive" only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court. If, however, § 702 of the APA is construed to authorize a district court to grant monetary relief—other than traditional "money damages"—as an incident to the complete relief that is appropriate in the review of agency action, the fact that the purely monetary aspects of the case

could have been decided in the Claims Court is not a sufficient reason to bar that aspect of the relief available in a district court.

*Bowen v. Massachusetts*, 487 U.S. at 910 n. 48, 108 S.Ct. at 2740 n. 48.

Furthermore, the Court of Federal Claims lacks jurisdiction for claims under the Civil Rights Act, *Anderson v. United States*, 22 Cl.Ct. 178, 179 n. 2 (Cl.Ct.1990), *affm'd*, 937 F.2d 623 (Fed.Cir.1991), as well as the authority to enter a declaratory judgment or other affirmative nonmonetary relief "unless it is tied and subordinate to a monetary award." *Martinez v. United States*, 26 Cl.Ct. 1471, 1476 (Cl.Ct.1992), *affm'd*, 11 F.3d 1069 (Fed.Cir.1993); *see Charles v. Rice*, 28 F.3d 1312, 1322–1323 (1st Cir.1994) (collecting cases). In addition, neither the sections at issue in the VPA and the VRA nor public policy provide the necessary substantive right enforceable against the United States for money damages. *See generally Markey v. United States*, 27 Fed.Cl. at 620–621 (discussing necessity for "money mandating predicate upon which to base jurisdiction"). Inasmuch as the Tucker Act is only a jurisdictional statute which " 'does not create any substantive right enforceable against the United States for money damages,' " *Dehne v. United States*, 970 F.2d 890, 893 (Fed.Cir. 1992), it does not provide a means to divest this court of jurisdiction over plaintiff's APA claim.

Defendants also seek to dismiss the counts pertaining to the VRA, the VPA, the APA and public policy on the ground of laches. (Docket Entry # 13, pp. 4–5). Laches *is an equitable defense which, if successful, bars claims for equitable relief.* Where, as here, plaintiff brings a timely claim within the statutory period, defendant bears the burden of establishing laches. *K–Mart Corporation v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir.1989). Defendant therefore bears the devoir to show that plaintiff's delay was: "(1) unreasonable, and (2) resulted in prejudice to [defendant]." *Murphy v. Tim-*

---

**13.** The issue is not whether the Court of Federal Claims has exclusive jurisdiction over an *appeal* of a claim against the United States exceeding $10,000. *See Charles v. Rice*, 28 F.3d 1312,

1321–1322 (1st Cir.1994); *Sibley v. Ball*, 924 F.2d at 29. Rather, the issue is the jurisdiction of the United States District Court in the District of Massachusetts in light of the Tucker Act.

*berlane Regional School District,* 22 F.3d 1186, 1189 (1st Cir.1994).

▮ Plaintiff filed this action in February 1994 based on conduct occurring in the summer of 1991. Plaintiff timely pursued his discrimination claims and in December 1993 received a final agency decision. He acted promptly thereafter in filing a complaint in this court. The equitable relief plaintiff seeks includes an adjustment to his service compensation dates. Defendant's argument regarding prejudice simply because "there is now no equitable relief that could be given because the positions for which [plaintiff] applied were temporary" is therefore misplaced. Viewing the verified complaint in plaintiff's favor and the facts alleged therein, defendant fails to meet its burden of establishing the unreasonableness and the prejudice resulting from this delay on a motion to dismiss. Whether defendant meets its burden on summary judgment or upon factual findings by the court is not at issue.

## CONCLUSION

In light of the foregoing discussion, this court **RECOMMENDS**[14] that defendant's motion to dismiss (Docket Entry # 7) be **ALLOWED** as to counts I, II and VII and **DENIED** as to Count III which, subject to the limited nature of the relief available under the APA, plaintiff may pursue.

---

**14.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).